**RECORD NO. 13-4936**

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

―――――――――――

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JAMES CARL SPIRES, III,

*Defendant-Appellant.*

―――――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, BALTIMORE DIVISION

HONORABLE JAMES K. BREDAR, PRESIDING

―――――――――――

**OPENING BRIEF OF APPELLANT
JAMES CARL SPIRES, III**

―――――――――――

Ezra S. Gollogly
Patrice Meredith Clarke
KRAMON & GRAHAM, PA
Suite 2600 Commerce Place
1 South Street
Baltimore, Maryland 21202
(410) 752-6030 Telephone
egollogly@kg-law.com
pclarke@kg-law.com

*Counsel for Appellant*

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ......................................................................... iii

STATEMENT OF JURISDICTION......................................................1

ISSUES PRESENTED FOR REVIEW ...................................................1

PREFATORY STATEMENT ..................................................................2

STATEMENT OF THE CASE AND FACTS .........................................4

SUMMARY OF ARGUMENT ...............................................................13

ARGUMENT ...........................................................................................16

    I.      Standard of Review ............................................................16

    II.    The District Court erred by using a non-predicate
          offense to determine that Spires is a career criminal ...........................17

    III.   The District Court erred in calculating the sentence
          by extending Spires' criminal history category
          to a "fictional IX" ...............................................................23

    IV.   The District Court abused its discretion by issuing
          an incoherent sentence that lacks adequate explanation ......................25

    V.    The District Court erred by declining to consider
          Spires' request that his federal sentence run
          concurrently with his existing state sentence .......................27

CONCLUSION.........................................................................................28

REQUEST FOR ORAL ARGUMENT ...................................................30

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................31

i

CERTIFICATE OF SERVICE .................................................................32

# TABLE OF AUTHORITIES

## CASES

*Carachuri-Rosendo v. Holder*,
    560 U.S. 563 (2010) ........................................................................22

*Gall v. United States*,
    552 U.S. 38 (2007) ..................................................16, 17, 25, 27

*Puckett v. United States*,
    556 U.S. 129 (2009) ........................................................................17

*Rita v. United States,*
    551 U.S. 338, 356 (2007) ..............................................................25

*United States v. Arce-Campos*,
    No. 13-4759, 2014 WL 1799805 (4th Cir. May 7, 2014) ..............27

*United States v. Dalton*,
    477 F.3d 195 (4th Cir. 2007) ..........................................3, 14, 15, 23

*United States v. Carter*,
    564 F.3d 325 (4th Cir. 2009) ........................................................17

*United States v. Clark*,
    267 F. App'x 189 (4th Cir. 2008) ..................................................18

*United States v. Covington*,
    133 F.3d 639 (8th Cir. 1998) ....................................................19, 20

*United States v. Fuller*,
    535 F. App'x 304 (4th Cir. 2013) ..................................................28

*United States v. Granados*,
    962 F.2d 767 (8th Cir.1992) ..........................................................20

*United States v. Green*,
　　436 F.3d 449 (4th Cir. 2006) ...........................................................17

*United States v. Hamad*,
　　478 F. App'x 754 (4th Cir. 2012)...................................................21

*United States v. Lynn*,
　　592 F.3d 572 (4th Cir. 2010) ...........................................16, 23, 25, 27

*United States v. Mikalajunas*,
　　186 F.3d 490 (4th Cir. 1999) ...........................................................17

*United States v. Milam*,
　　443 F.3d 382 (4th Cir. 2006) ...........................................................21

*United States v. Rivera-Santana*, 668 F.3d 95 (4th Cir. 2012), *cert. denied,*
　　133 S.Ct. 274 (2012)........................................................................16

*United States v. Rodriquez*,
　　553 U.S. 377 (2008)..........................................................................22

*United States v. Simmons*,
　　649 F.3d 237 (4th Cir. 2011) ...........................................................22

*United States v. Smith*,
　　289 F.3d 696 (11th Cir. 2002) .........................................................23

## STATUTES

18 U.S.C. §2553(a)(2)........................................................................11, 12
18 U.S.C. § 3231.......................................................................................1
18 U.S.C. § 3553(a) ...........................................................................10, 17
18 U.S.C. § 3584(a) .................................................................................28
18 U.S.C. § 3742(a) ...................................................................................1
18 U.S.C. § 3742(f)(1) .............................................................................17
21 U.S.C. § 846..........................................................................................1
28 U.S.C. § 1291........................................................................................1

Fla. Stat. Ann. § 775.26 ...........................................................................24

## UNITED STATES SENTENCING GUIDELINES

U.S.S.G. §2D1.1 ......................................................................................24
U.S.S.G. §4A1.2(e)(1) .......................................................................13, 18
U.S.S.G. § 4A1.2(e)(2) .............................................................................13
U.S.S.G. § 4A1.2(k)(2)(B)(i) ...................................................................18
U.S.S.G. § 4A1.3(a)(4)(B) ...................................................................3, 23
U.S.S.G. §4B1.1 ........................................................................................6
U.S.S.G. §4B1.1(a) ..................................................................................18

## OTHERS

Thomas W. Hutchinson, et al., Fed. Sent. L. & Prac. § 6A1.3 (2014 ed.) .............21

# STATEMENT OF JURISDICTION

### A.    Subject Matter Jurisdiction

This case arises out of the conviction of Appellant James Carl Spires, III for violating federal criminal statute 21 U.S.C. § 846. The District Court has original jurisdiction over this action pursuant to 18 U.S.C. § 3231.

### B.    Appellate Jurisdiction

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which provides for appeals from final decisions of district courts, and 18 U.S.C. § 3742(a), which provides for appeals of sentences, and Rule 4(b) of the Federal Rules of Appellate Procedure. Spires timely filed a notice of appeal on December 6, 2013 from the District Court's final judgment, which was entered on November 27, 2013.

# ISSUES PRESENTED FOR REVIEW

I.     Did the District Court err in finding that Spires was a career criminal when, but for a concurrent sentence on a non-predicate offense, Spires would not have been incarcerated within the 15-year period necessary to satisfy sentencing guideline 4A1.2(a)(2)?

II.     Did the District Court abuse its discretion by imagining out the sentencing guidelines on a horizontal basis to increase Spires' criminal history category "to a fictional IX" rather than increasing Spires' offense level?

III.     Did the District Court abuse its discretion by imposing an incoherent sentence that lacks adequate explanation?

1

IV.    Did the District Court commit plain error by declining to consider Spires' request that his federal sentence run concurrent to an existing state sentence?

## PREFATORY STATEMENT

Sentencing judges routinely use presentence reports to aid in determining a defendant's criminal history category and offense level. Frequently, those same judges must resolve a defendant's challenge to facts in the presentence report. The resolution of such factual disputes often, as in this case, has a dramatic effect on a defendant's sentence. But what is the standard for resolving such factual challenges? And who bears the burden of proving facts in a presentence report?

The Circuits are split on how to answer these critical questions. Some Circuits (the Tenth, Fifth, and Seventh, for example) hold that it is the Defendant's burden to present evidence to rebut the facts in a presentence report. Other Circuits (the Eighth and the Sixth, for example) hold that any objection to facts in the presentence report requires the government to establish the disputed facts by a preponderance of the evidence.

Although this Court has yet to address these issues head-on, this case presents the perfect vehicle to do exactly that. Here, Spires presented evidence at sentencing that disproves a fact in the presentence report. That evidence was not rebutted by the government, despite that it was fatal to the government's argument that Spires should be classified as a career criminal. This Court should vacate the

District Court's sentence, and take this opportunity to clarify how factual challenges to a presentence report should be resolved.

In addition, the District Court's sentence in this case violates *U.S. v. Dalton*, 477 F.3d 195 (4th Cir. 2007), which held that "[w]hen a defendant is already in the highest criminal history category, Category VI, a sentencing court *must* depart on the vertical axis, 'moving incrementally down the sentencing table to the next higher offense level.'" *Id*. at 200 (quoting U.S.S.G. § 4A1.3(a)(4)(B) (2013) (emphasis added; citation omitted)). Here, the District Court failed to depart on the vertical axis, and instead sentenced Spires according to an imaginary criminal history category, that of a "fictional IX." Again, this Court should vacate the District Court's sentence, and make clear that sentencing departures for defendants within Category VI must take place on a vertical, not horizontal, basis.

Finally, the District Court's sentence is fundamentally incoherent. It is impossible to reconstruct the reasoning that led the District Court from an offense level 29 and a "fictional IX" criminal history category to the 84 month sentence imposed on Spires. The District Court also failed to comprehend Spires' request that the District Court order that his federal sentence run concurrent with an existing state sentence. For these reasons, Spires was sentenced without adequate explanation, which is yet another reason for vacating the District Court's sentence.

3

## STATEMENT OF THE CASE AND FACTS

On June 19, 2013, James Carl Spires, III pled guilty to conspiracy to distribute a mixture or substance containing cocaine hydrochloride. (J.A. 23-53). Spires' base guideline sentence range according to the sentencing table was 51 to 63 months.[1] But at sentencing, the United States District Court for the District of Maryland found that Spires was a career offender. With that enhancement, Spires' guideline range leapt to 151 to 188 months. The District Court sentenced Spires to 84 months' incarceration followed by 3 years' supervised release.

## I.      Presentence Proceedings

Prior to Spires' sentencing, the District Court's Probation & Pretrial Services Office ("U.S. Probation Office") issued several presentence reports and one pre-plea report. Because those reports are crucial to the issues presented in this appeal, they are explained below.

On March 13, 2013, at the request of Spires' trial counsel and with the Court's approval, the U.S. Probation Office sent Spires and the government a pre-plea criminal history report. That report indicated that Spires' criminal history category was VI, but did not analyze Spires' offense level.

---

[1] Spires' criminal history category was a VI and his offense level was a 17.

On June 4, 2013, the government sent Spires a letter outlining the details of the plea agreement. That letter explained that the government was not making an agreement about Spires' criminal history or criminal history category and that his criminal history could alter his offense level. But nothing in the government's letter suggested that Spires qualified as a career offender.

Relying on the pre-plea report, the letter from the government, and the advice of his counsel, Spires pled guilty on June 19, 2013. At the plea hearing, there was no mention of career offender status.

On July 25, 2013 the U.S. Probation Office issued a presentence report. Once again, there was no discussion of career offender status. (J.A. 136)

On August 12, 2013, the government noted objections to the presentence report, arguing, for the first time, that "based on [his] prior convictions for Resisting Arrest and Possession With Intent to Distribute, the defendant appears to be a Career Criminal." (J.A. 162)

On August 19, 2013, the U.S. Probation Office issued an amended presentence report. (J.A. 136-164) The report stated that Spires was convicted of battery and resisting arrest on September 26, 1995, and identified the resisting arrest conviction as a predicate for categorizing Spires as a career offender. The report indicated that on March 1, 1996, Spires was sentenced to two years' incarceration for his resisting arrest conviction. The report also indicated that the

5

resisting arrest sentence *ran concurrently with a four year sentence for CDS possession* that Spires began serving on September 4, 1995. The conviction for CDS possession, of course, was not a predicate offense for categorizing Spires as a career offender. After serving time for the resisting arrest and CDS possession convictions, Spires was released on January 17, 1998, approximately 14 years and 5 months prior to the commencement of the instant offense.

The August 19 presentence report includes a finding that Spires was a career criminal:

> Since the instant offense involves Conspiracy to Distribute and Possession With Intent to Distribute a Controlled Substance and the defendant was 18 years or older at the time of its commission, and the defendant has at least 2 prior felony convictions of either a crime of violence or a controlled substance offense, the defendant is a career offender within the meaning of U.S.S.G. §4B1.1. The offense level determined under U.S.S.G. §4B1.1 is 32 rather than the lower level calculated above.

(J.A. 142)[2]

Sentencing was originally scheduled for October 9, 2013. But, upon learning of the career offender enhancement, Spires' trial counsel requested a continuance. (J.A. 168) Spires' counsel wrote to the District Court on November 1, 2013 and objected to Spires' classification as a career offender. Spires' counsel explained that Spires did not understand that he was a career offender prior to

---

[2] After reductions for accepting responsibility, Spires' offense level was 29. ( J.A. 142)

pleading guilty. (J.A. 168) Spires' counsel further explained that it is unclear "whether the two year sentence for Resisting Arrest resulted in Spires being incarcerated during any part of the fifteen year period preceding his involvement in the instant offense." (J.A. 170) This is because Spires was entitled to good time, parole, and diminution credits for the resisting arrest sentence, and, but for the CDS possession sentence (which, again, is not a predicate offense), Spires would have been released *before* June 1997, thus rendering the resisting arrest conviction expired for purposes of the career offender statute. In this regard, Spires cited a report from the Offender Based State Correctional Information System ("OBSCIS") evidencing that he amassed a significant amount of good time credits while he was incarcerated for the resisting arrest and CDS possession convictions—enough, in fact, to cut his four year sentence on the CDS possession conviction in half. (J.A. 117)

In response to Spires' request for a continuance, the government submitted a letter articulating the following theory:

> According to the Probation Office's analysis, the defendant was released from state imprisonment on [the resisting arrest and CDS] convictions on different dates: on January 20, 1998 in the case of the CDS possession conviction (PSR ¶ 37) and January 17, 1998 in the case of the resisting arrest (PSR ¶ 39). . . . Two different release dates indicates that the defendant's incarceration for the resisting arrest was calculated and determined independently of the CDS possession

conviction.  In any event, the defendant gives no reliable basis to dispute the PSR's analysis.[3]

(J.A. 178)  The government asked the District Court to impose a sentence of 10 years' imprisonment if Spires was found to be a career offender.

## II.    Sentencing

### a.    Ruling on Career Offender status

At the sentencing hearing on November 25, 2013, Spires' counsel argued that the resisting arrest conviction was "timed out" for purposes of categorizing Spires as a career offender.  As the District Court would later put it, Spires argued that "had he only been convicted of the career offender predicate offense [of resisting arrest then] he would have[,] under the operation of Maryland law[,] completed service of that sentence and been discharged from custody . . . prior to a date that was 15 years before the date of this offense."  (J.A. 59)  Spires' trial counsel added that, under Maryland laws and rules, but for the CDS possession sentence, Spires' release date for the predicate "would have been, at worst-case scenario May 13, 1997," which predated the start of the 15-year time period.  (J.A. 61)  Spires' counsel based that argument, in part, on the OBSCIS report that

---

[3] As discussed more fully below, Spires' trial counsel objected to the amended presentence report and informed the government that "[a] review of both Baltimore City Jail records and Probation and Parole records reveal that the defendant was released from custody on January 17, 1998," prior to the government making this argument.  (J.A. 163)  There was no indication that Spires was released on January 20, 1998 other than in the presentence report, which was apparently an error.

8

evinces the good time credits that Spires amassed while serving time for the alleged predicate offense. (J.A. 116-17)

The government argued that Spires was sentenced to two years' incarceration on March 1, 1996, and that "the Maryland Division of Corrections shows a mandatory release date for resisting arrest conviction on January 17, 1998."[4] (J.A. 60) Therefore, Spires was serving time during the 15-year period. The government did not introduce any evidence, apart from the presentence report to demonstrate that there were two separate mandatory release dates.

The District Court noted that the government's position was that Spires could not "say that he was not still in custody" within the 15-year period because he was actually incarcerated, even if he would have been released absent the CDS possession sentence. (J.A. 60)

Ultimately, the District Court categorized Spires as a career offender and explained:

> . . . . I think the Government's position is technically correct in that the Defendant qualifies as a career offender, because you cannot say with certainty how the Maryland sort of remission provisions would have been applied in this Defendant's case, because he simply was not

---

[4] This was the actual date Spires was released from the concurrent sentences. There is no indication of a mandatory release date for the resisting arrest charge apart from the presentence report. It is unclear why the U.S. Probation Office included this mandatory release date in its presentence report rather than acknowledging that it was the date of Spires' actual release after serving time for the resisting arrest and CDS possession convictions.

eligible for them by virtue of the fact that this sentence was carrying along with this other more lengthy sentence.

And so the records, as far as they go, reflect imposition of the two-year sentence, that is sort of offense that is a predicate offense for a career offender, and the mandatory release date shown in the Maryland records is not until January of 1998. That is well into the 15-year period.

So I find that it qualifies as a career offender predicate and that the Defendant technically is a career offender. That is my first observation.

My second observation, which will become more important later as we get to the actual sentencing of the Defendant, is, you know, this is silliness. We have a swing in a man's sentence of five, seven, eight years over the question of where this date falls some fifteen years prior in a six-or seven-month period. It is just guideline sentencing gone crazy. And, thank goodness, we have *Booker* and some of the other sentencing law that has come down that provides the Court with the opportunity to still impose a sentence that is in the broadest sense just and fair and not—you know, we are not tax accountants sitting in here, which is what this process turns us into.

(J.A. 62-63)

With the District Court's determination that Spires was a career offender, Spires' guidelines range jumped from 51 to 63 months to 151 to 188 months.[5]

**b.    Sentencing**

After naming the factors listed in U.S.C. § 3553(a), the District Court rendered the following opinion:

. . . . And in this case, properly computed, [the guidelines] recommend a sentence of 151 to 188 months. Because I find under a technically correct application of the Federal Sentencing Guidelines that this

---

[5] The classification of Spires as a career offender increased his offense level from 17 to 29.

10

Defendant qualifies as a career offender for the reasons set out earlier in the hearing.

The result, in terms of the very substantial increase, the more than doubling of the sentencing exposure in the case, strikes the Court as seriously out of proportion with the history and the facts as presented here. And I have no intention of sentencing the Defendant to a career offender range of 151 to 188 months when, but for a few months difference in when the offense was committed and how that sentence was sort of carried on the books, the Defendant, rather than looking at 151 to 188 months, would be looking at something far closer to 5 years under the sentencing guidelines.

Thank goodness we are not bound to follow those kinds of strict, inflexible, and uncompromising sentencing rules, as we once were, because application of them here, strictly speaking, would have resulted in injustice.

The sentence that is sufficient, but not greater than necessary to comply with the purposes set out in 18 USC Section 2553(a)(2) [*sic*], nonetheless can be arrived at through using the sentencing guidelines as a base and as a tool to help calculate what the sentence should be. And I have done exactly that here.

I am imposing a variant sentence. But my thinking is that the proper way to approach this is to look at the criminal history that the Defendant amassed and then **imagine how the Sentencing Commission, if they had promulgated criminal history categories out to accommodate something like 20 criminal history points, what the range of sentences would be.**

Now it is clear that another way I could have gone about this is by simply imposing a guideline sentence with an upward departure, finding that the criminal history category of six did not adequately take into consideration the true seriousness of the Defendant's criminal history. And that is one way of doing it. But after *Rita* and *Gall*, the Court also has the option of simply imposing a variant sentence. And that is the approach that I have applied here.

But in general, it is to say that this sentence should fall in a range that would be sort of an **imagine[d] or projected three criminal history categories higher than where the Defendant actually falls. So rather than VI, it ought to be a fictional IX. And then how to exactly project what that would be is slightly difficult. But by looking at the sentencing guidelines table, one can get a general idea of what the commission would have done**

11

> **with that and from that some guidance about what is a proportional sentence in the circumstances that we are in.**
>
> All that having been taken into account, the sentence that is sufficient but not greater than necessary to comply with the purposes set out in 18 USC Section 3553(a)(2) is 84 months or 7 years in prison to be followed by 3 years on supervised release.

(J.A. 98-100 (emphasis added))

Trial counsel for Spires then explained that Spires "was sentenced on a violation of probation in [a Maryland Circuit Court] last week" and he asked that Spires' Federal sentence "be run concurrent with that sentence." (J.A. 104)  Spires himself explained that he "got a year and a day" and that the trial judge stated that the sentence "ran consecutive to any unwarranted and unserved sentences." (J.A. 104)  Spires' trial counsel explained that the State court sentence was "one year and one day consecutive to any unserved Maryland sentence.  There were no outstanding Maryland sentences." (J.A. 105)

In response, the District Court stated:

> Well, I would think that the ordinary practice would be . . . perhaps the matter can be taken back to [the State court], as can happen in state court, with a request that he modify his sentencing orders, so that the probation violation sentence imposed as a result of the new criminal conduct that gives rise to this conviction in Federal Court and this sentence in Federal Court. . . .  But I am not going to turn around and make this one concurrent with a sentence imposed over there that really bears no real relationship to this.

(J.A. 106)

Spires was remanded to the custody of the marshal on November 25, 2013,

and has been imprisoned ever since.[6]

## SUMMARY OF ARGUMENT

This case presents four issues: (1) The unresolved issue that District Courts

in this Circuit confront when determining whether the government has met its

burden of proving the basis of a sentence by a preponderance of the evidence when

a defendant challenges facts in a presentence report and the government fails to

---

[6] The District Court apparently sentenced Spires under the assumption that Spires would have "something like 20 criminal history points." (J.A. 99) The District Court based this assumption partly on a one point enhancement for a malicious destruction of property charge from April 24, 2002. At sentencing Spires' counsel argued that the malicious destruction charge was expired for enhancement purposes pursuant to U.S.S.G. § 4A1.2(e)(2) (2013) because it occurred more than ten years prior to the commencement of the instant offense in July 2012. The government argued that Spires violated his probation, a bench warrant was executed, and therefore, Spires must have been incarcerated during the ten years preceding the instant offense. The District Court agreed and assessed a criminal history point against Spires.

There are two errors with this analysis. *First*, 4A1.2(e)(2) only permits a court to count "[a]ny other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense." Unlike the fifteen-year period set forth in 4A1.2(e)(1), the ten-year period does not contain a provision that it should be counted if it "resulted in the defendant being incarcerated" during the period. Rather, the ten-year period is measured from the date the sentence was imposed. *Second*, Spires was not even incarcerated during the ten-year period. On August 14, 2002 when the bench warrant was executed, Spires was arrested at the Commissioner's office but was never detained. In short, Spires was not incarcerated for the malicious destruction during the ten year period preceding the instant offense.

Consequently, even if the District Court properly "imagined out" the guidelines (it did not), Spires should not have had a criminal history point for the malicious destruction charge, nor any points for the career offender classification, Spires would have had only 16 criminal history points, not 20.

introduce any additional facts in response; (2) Whether the District Court erred in sentencing Spires based on an imaginary criminal history category in light of this Court's decision in *U.S. v. Dalton*, 477 F.3d 195 (4th Cir. 2007); (3) Whether the District Court erred in failing to adequately explain Spires' sentence; and (4) Whether the District Court erred by refusing to run Spires' federal sentence concurrent to his existing state sentence.

Spires objected to the use of his resisting arrest conviction as a predicate for categorizing him as a career criminal because, but for a separate, non-predicate offense, the resisting arrest charge would have expired. Spires explained to the District Court that there were not two separate release dates and that his attorney had reviewed the Baltimore City Jail records and the Probation and Parole records, both of which indicated one release date. Spires argued that as a result of diminution credits, he would have been released more than fifteen years before the commencement of the predicate offense for resisting arrest. The government, however, introduced no evidence in response (apart from simply referring to the presentence report itself).

When a defendant makes an objection to any fact contained in a presentence report, it is the government's burden to introduce *evidence* to overcome that objection. Here, Spires objected to the two separately listed release dates on the basis that those dates were factually inaccurate. In fact, there was only one release

14

date, and the OBSCIS Report furnished by Spires further supports that point. Yet the government based its argument that Spires was a career offender on release dates in the presentence report, *even after* Spires' counsel pointed out their inaccuracy. It is the government's burden to prove that an offense is a predicate offense for purposes of classifying a defendant as a career criminal. Here, the District Court improperly shifted the burden to Spires to prove that his prior convictions were not predicate offenses.

The District Court also improperly sentenced Spires to an enhanced sentence by increasing Spires' Criminal History Category above VI on the guidelines range. This Court has held that a sentencing court may not enhance a defendant's sentence based on an increase in Criminal History Category above Category VI, but rather, must use an increase in offense level to "up" the guidelines. *Dalton*, 477 F.3d at 200 (holding that "[w]hen a defendant is already in the highest criminal history category, Category VI, a sentencing court must depart on the vertical axis. . . ."). The District Court violated *Dalton* by sentencing Spires in accord with a "fictional" category IX.

Finally, the District Court's sentence is insufficiently explained. If Spires truly was a career offender, his guidelines range would have been much higher than his base range. And, if the District Court truly did increase Spires' criminal history category, his guidelines range would have been much higher than his base

15

range.  But Spires' actual sentence fell in the middle of the base range and the

career offender range.  It appears that the District Court sentenced Spires based on

his guidelines range without the career offender enhancement.  But the District

Court did not adequately explain how it reached that conclusion under *Gall v.*

*United States*, 552 U.S. 38, 46 (2007), which requires that "a district judge must

give serious consideration to the extent of any departure from the Guidelines and

must explain his conclusion that an unusually lenient or an unusually harsh

sentence is appropriate in a particular case with sufficient justifications."   A

District Court must also explain a decision to run a sentence consecutive to an

existing sentence.  In short, Spires' sentence is incoherent and not sufficiently

explained.  It should be vacated by this Court.

## ARGUMENT

## I.    Standard of Review

This Court reviews a sentence for any abuse of the trial court's discretion.

*Gall*, 552 U.S. at 51.   It reviews both the procedural and substantive

reasonableness of a sentence.  *Id.*; *see United States v. Lynn,* 592 F.3d 572, 575

(4th Cir. 2010).   A "deferential abuse-of-discretion standard applies to any

sentence, whether inside, just outside, or significantly outside the Guidelines

range."  *United States v. Rivera–Santana,* 668 F.3d 95, 100–01 (4th Cir. 2012)

(internal citation and quotation marks omitted), *cert. denied,* 133 S.Ct. 274 (2012).

16

Procedural errors include "'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.'" *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) (quoting *Gall,* 552 U.S. at 51). This Court reviews procedural errors for harmlessness. *Puckett v. United States,* 556 U.S. 129, 141 (2009). Substantive errors include errors in applying the sentencing guidelines. *See, e.g.*, *United States v. Mikalajunas*, 186 F.3d 490, 501 (4th Cir. 1999).

When a sentence falls outside the guidelines range, it "is not *ipso facto* unreasonable." *United States v. Green*, 436 F.3d 449, 457 (4th Cir. 2006). But, "if that sentence is based on an error in construing or applying the Guidelines, it will be found unreasonable and vacated." *Id.* (citing 18 U.S.C. § 3742(f)(1)). Further, a sentence should be vacated if it is "outside the Guideline range and the district court provides an inadequate statement of reasons or relies on improper factors in departing from the Guidelines' recommendation." *Id.*

## II. The District Court erred by using a non-predicate offense to determine that Spires is a career criminal.

### A. The Sentencing Guidelines.

A defendant is a career offender if

17

(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. §4B1.1(a) (2013).

Under U.S.S.G. §4A1.2(e)(1) (2013), a "prior sentence" for purposes of career offender classification is

[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense" and "any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

"In calculating the fifteen-year time period, the guidelines direct the use of the date of a defendant's last release. . . ." *United States v. Clark*, 267 F. App'x 189, 190 (4th Cir. 2008) (citing U.S.S.G. § 4A1.2(k)(2)(B)(i)).

### B. It is the government's burden to prove predicate offenses, not a defendant's burden to disprove them; but here, the District Court committed error by shifting that burden to Spires.

The District Court should not have considered Spires' 1996 resisting arrest a predicate offense for purposes of determining that Spires was a career offender.

The District Court found that Spires was incarcerated as a result of the resisting arrest charge "because you cannot say with certainty how the Maryland sort of remission provisions would have been applied in this Defendant's case,

18

because he simply was not eligible for them by virtue of the fact that this sentence was carrying along with this other more lengthy sentence." (J.A. 62)  In other words, although the Court recognized that Spires might have been released prior to the 15-year period absent the concurrent sentence, the Court held that it did not matter because Spires was, in fact, incarcerated during the relevant time period. But it does matter.

In *United States v. Covington*, 133 F.3d 639, 643 (8th Cir. 1998) the Eighth Circuit addressed this issue.  A defendant was imprisoned for burglary (a predicate offense) in 1975, but was released on parole in 1978, outside the 15-year period. In 1979, the defendant was convicted of another (non-predicate) offense involving a firearm, for which he was imprisoned.  The government attempted to argue that the burglary conviction could serve as a predicate for purposes of career criminal classification because the defendant violated his burglary parole.  But the record did not indicate that the defendant was ever re-sentenced for violation of his burglary parole.  The defendant objected on the basis that there was no definitive indication that he was re-imprisoned on the burglary offense rather than only on the non-predicate firearm offense.

The Eighth Circuit agreed with the defendant, explaining that

"[o]nce a defendant objects to a factual allegation in the presentence report, the court must make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing." *United*

19

*States v. Granados,* 962 F.2d 767, 771 (8th Cir.1992) (quotation and citation omitted). If the court chooses to make a finding as to the factual allegation, "the government must introduce evidence sufficient to convince the Court by a preponderance of the evidence that the fact in question exists." *Id.* at 771-72 (quotation and citation omitted).

133 F.3d at 643. The Eighth Circuit explained that "no evidence was introduced to confirm that [the defendant] was imprisoned for burglary during the relevant period rather than for the [non-predicate firearm] offenses." *Id.* at 643.

The lesson of *Covington* is that it is the government's burden to demonstrate that an offense is a predicate offense, *not* the defendant's burden to demonstrate that an offense cannot serve as a predicate. Here, the District Court effectively shifted the government's burden to Spires. This improper burden shifting is reflected in the District Court's statement that it could not "say with certainty how the Maryland sort of remission provisions would have been applied in this Defendant's case. . . ." (J.A. 62) Such burden shifting is a procedural error.

The Circuits have disagreed on this issue:

When there is an objection to a portion of the presentence report, many courts have held that the sentencing court must do more than simply adhere to the presentence report. The Eighth Circuit has taken the strongest position against treating the presentence report as evidence, simply stating that the presentence report is not evidence. Once there is an objection to a factual allegation, the Eighth Circuit has repeatedly stated that the party who is responsible for proving that point, such as the government for the base offense level, must establish the fact by a preponderance of the evidence. The Eighth Circuit's language was adopted by the Sixth Circuit. The Tenth Circuit has held that where the defendant has offered a bare denial a court may rely on the presentence report as long as the report was

based on sufficiently reliable information. The Fifth Circuit has taken the strongest position favoring reliance on the presentence report. The Fifth Circuit has repeatedly held that a court may rely on facts in the presentence report unless the defendant presents competent rebuttal evidence to refute the presentence report. The circuit further stated that mere objections do not suffice as such competent rebuttal evidence. The Seventh Circuit has agreed with this analysis.

Thomas W. Hutchinson, et al., Fed. Sent. L. & Prac. § 6A1.3 (2014 ed.).

Although this Court has not had occasion to apply this test in the instant context, this Court has addressed the issue generally, explaining that "[g]enerally, a district court must find facts relevant to sentencing by a preponderance of the evidence." *United States v. Hamad*, 478 F. App'x 754, 755 (4th Cir. 2012). This Court has also noted that "a defendant's failure to object [to facts in a presentence report] justifies the district court's reliance on the presentence report for factual matters." *United States v. Milam*, 443 F.3d 382, 386 (4th Cir. 2006). In this case, however, Spires did not fail to object.

In fact, Spires challenged the facts in the presentence report, including the mandatory release date listed for the resisting arrest charge. Spires directly supported that challenge by citing records from the institution where he was incarcerated. (J.A. 163) Further, Spires introduced the OBSCIS Report showing that he actually received adequate good time so that he would have actually been released prior to the 15-year period. (J.A. 115-16) Yet the government presented no evidence (apart from the presentence report that Spires challenged) to

21

demonstrate that Spires was incarcerated on a predicate offense within the 15-year period. Further, the District Court specifically did *not* make a finding "with certainty" (J.A. 62) or by any other standard that Spires was incarcerated on a predicate offense during the 15-year period.

Instead, the District Court made a hypothetical finding that Spires was incarcerated *for a predicate offense* during the 15-year period. But the Supreme Court has made clear that trial courts should not use hypotheticals to enhance a defendant's sentence. *See, e.g.*, *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 582 (2010) (discussing using a defendant's prior conviction to enhance a sentence and stating "[t]he mere possibility that the defendant's conduct, coupled with facts outside of the record of conviction, could have authorized a felony conviction [which would have enhanced the sentence] under federal law is insufficient to satisfy the statutory command that a noncitizen[7] be 'convicted of a[n] aggravated felony.'"); *see also United States v. Simmons*, 649 F.3d 237, 243 (4th Cir. 2011) (citing *United States v. Rodriquez*, 553 U.S. 377, 389 (2008)) (explaining that when a state conviction could have been, but was not, a predicate offense, "the Supreme Court has held that the Government is 'precluded from establishing that a

---

[7] *Carachuri-Rosendo* involved a noncitizen applying for cancellation of removal after he was convicted of criminal offenses. A federal statute precludes cancellation of removal if a defendant has been convicted of an aggravated felony. The Supreme Court held that the non-citizen had not been convicted of an aggravated felony.

conviction was for a qualifying offense' on the basis of such a hypothetical enhancement.").

Thus, the District Court did not make, and could not have made, a finding "by a preponderance of the evidence" that Spires was incarcerated on the resisting arrest charge within the 15-year period. Therefore, Spires' sentence is both procedurally and substantively unreasonable.

## III. The District Court erred in calculating the sentence by extending Spires' criminal history category to a "fictional IX."

In *United States v. Dalton,* 477 F.3d 195, 200 (4th Cir. 2007), this Court held that "[w]hen a defendant is already in the highest criminal history category, Category VI, a sentencing court *must* depart on the vertical axis, 'moving incrementally down the sentencing table to the next higher offense level.'" (quoting U.S.S.G. § 4A1.3(a)(4)(B) (emphasis added)) (citing *United States v. Smith,* 289 F.3d 696, 711 (11th Cir. 2002)). A sentencing court simply may not depart along the horizontal axis. And, "[w]hile the court need not move just one offense level or move mechanistically through the levels, it *must* provide some explanation for the magnitude of its departure." *United States v. Lynn*, 592 F.3d 572, 582 n.6 (4th Cir. 2010) (emphasis added).

Spires was in criminal history category VI.[8]  The District Court specifically said that it was sentencing Spires as though the Sentencing Commission "had promulgated criminal history categories out to accommodate something like 20 criminal history points."  (J.A. 99)  The District Court further stated that it was sentencing Spires as though he was in a "fictional IX" category.  (J.A. 99)

Because of this procedural and substantive error, Spires was sentenced under an imaginary criminal history category.  Not only did the sentencing court fail to follow proper procedure, but that failure resulted in a sentence that does not fall within any comprehensible guidelines range.

The "career offender" label is, obviously, a significant matter for any defendant.  This label could have implications for Spires' future, including affecting his job prospects.[9]  In addition, the 2014 amendments to the sentencing guidelines reduce the base offense level for drug related offenses.  But it is unclear whether that reduction will apply to career offenders.  In fact, the amendments specifically state that "existing statutory enhancements, such as . . . enhancements for offenders who . . . are repeat or career offenders" can still be used.  U.S.S.G. §2D1.1 (2013) (amended Apr. 30, 2014) (effective Nov. 1, 2014).

---

[8] Spires was in a criminal history category VI even prior to the District Court's improper career offender classification.

[9] Some states also have, or may in the future have, Career Offender "registration" laws.  *See, e.g.*¸ Fla. Stat. Ann. § 775.26 (West 2002); H.B. 0028, 94th Gen. Assembly, (Ill. 2005 & 2006).

24

**IV.    The District Court abused its discretion by issuing an incoherent sentence that lacks adequate explanation.**

"The Supreme Court has held that when sentencing, a court must demonstrate that it 'considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decision making authority.'" *Lynn*, 592 F.3d at 576 (quoting *Rita v. United States,* 551 U.S. 338, 356 (2007)).  Moreover, "'[a] statement of reasons is important' because it 'helps [the sentencing] process evolve,'[] 'allow[s] for meaningful appellate review[,] and ... promote[s] the perception of fair sentencing.'" *Id.* (quoting *Rita*, 551 U.S. at 356; *Gall v. United States,* 552 U.S. 38, 50 (2007)) (some alterations in original).  Failure to explain a sentence is clear procedural error.  *Gall*, 552 U.S. at 51.

The District Court's explanation for Spires' 84 month sentence is baffling.  Spires' guidelines range, based on an offense level 29 and a criminal history category VI, is 151-188 months.  The District Court said that it was sentencing Spires in an imaginary criminal history category IX based on 20 criminal history points.  The District Court does not mention an altered offense level, so presumably that did not change.  Thus, the "fictional" guidelines imagined by the District Court, at offense level 29, might look something like this:

25

| | CRIMINAL HISTORY CATEGORY (Criminal History Points) | | | |
|---|---|---|---|---|
| | VI (Criminal History Points 13, 14, 15) | VII (Criminal History Points 16, 17) | VIII (Criminal History Points 18, 19) | IX (Criminal History Points 20, 21) |
| Offense Level | | | | |
| 29 | 151-188 | 168-210 | 188-235 | 210-262[10] |

As the above chart reflects, if the District Court was using a "fictional" category IX, Spires' guidelines range would have been somewhere around 210 to 262. But there is no way of knowing what the range would have been because the District Court did not adequately explain its reasoning.

Instead, with no explanation, the District Court sentenced Spires to 84 months' imprisonment. Perhaps Spires' sentence was designed to recognize that Spires should not be categorized as a career criminal. On that theory, the District Court might have sentenced Spires based on a "fictional" category IX with an offense level of only 17. If that was the reasoning relied on by the District Court, the chart might look like this:

| | CRIMINAL HISTORY CATEGORY (Criminal History Points) | | | |
|---|---|---|---|---|
| | VI (Criminal History Points 13, 14, 15) | VII (Criminal History Points 16, 17) | VIII (Criminal History Points 18, 19) | IX (Criminal History Points 20, 21) |
| Offense Level | | | | |
| 17 | 51-63 | 57-71 | 63-78 | 70-87 |

In fact, Spires' sentence does fall within the hypothetical guidelines range for sentence based on an offense level 17 and a criminal history category IX. Thus, there is at least some base for concluding that the District Court sentenced Spires

---

[10] Using current sentencing guidelines increases from criminal history category V to VI as a guide.

as his "normal"—*i.e.*, non-career offender—guidelines, but nevertheless labeled Spires a "career offender."

But this is problematic because if Spires truly was at an offense level 17 (as Spires' actual sentence indicates), the District Court is not permitted to go "above" Criminal History Category VI, and Spires' guidelines range should have been 51 to 63 months.

The Supreme Court has made clear that "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion . . . with sufficient justifications." *Gall v. United States*, 552 U.S. 38, 46 (2007). Moreover, "[i]n explaining a sentence, the district court must conduct an 'individualized assessment justifying the sentence imposed and rejection of arguments for a higher or lower sentence based on § 3553.'" *United States v. Arce-Campos*, No. 13-4759, 2014 WL 1799805 at * 2 (4th Cir. May 7, 2014) (quoting *United States v. Lynn*, 592 F.3d 572, 575 (4th Cir. 2010)).

The District Court failed to explain how it reached Spires' sentence of 84 months. There is no explanation for the way the chart was imagined. There is no explanation for whether there was an upward or a downward departure. The inadequate explanation given by the District Court, moreover, is inconsistent with the actual sentence. This Court should not uphold a sentence that is inconsistent

with the explanation given for the sentence or a sentence that has no comprehensible explanation at all.

### V.    The District Court erred by declining to consider Spires' request that his federal sentence run concurrently with his existing state sentence.

At sentencing Spires requested that his sentence run concurrent to his existing state sentence. The District Court refused to make that ruling, apparently laboring under misimpression that only the state court could issue such a ruling.

18 U.S.C.A. § 3584(a) provides:

> If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

The sentencing court has the power to impose a sentence that runs concurrent to an existing sentence. But if the sentencing court does not make a ruling in this regard, the sentences are deemed to run consecutively. *See, e.g.,* *United States v. Fuller*, 535 F. App'x 304, 305 (4th Cir. 2013) ("Because the district court's judgment did not order [the defendant's] federal sentence to run concurrently with his state sentence, we conclude that the Bureau of Prisons

28

properly calculated [the defendant's] federal sentence to begin upon the completion of his state sentence.").

In this case, the District Court implied that it did not have the power to enter a concurrent sentence, stating that the "matter can be taken back to [the State court]." (J.A. 106)  But it was clearly within the District Court's power to run Spires' federal sentence concurrent with his state sentence.  If the District Court intended Spires' sentence to be consecutive, so that, like the defendant in *Fuller*, his federal sentence would not begin until he finished serving his state sentence, the District Court should have clearly stated as much.  Instead, again, it is unclear what the District Court intended.

## CONCLUSION

For the foregoing reasons, Spires' sentence should be vacated.

# REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 34(a), Spires respectfully requests that oral argument be heard.

This case is the perfect vehicle for this Court to address the unresolved issue that district court judges in this Circuit face when confronted with a factual challenge to a pre-sentence report and the government's failure to rebut such a challenge. Because the Circuit Courts are split on this issue, this Court should take this opportunity to, like the Eighth Circuit, hold that when a defendant raises a factual challenge to a presentence report, and the government fails to introduce any evidence to rebut that challenge, the government has failed to meet its burden to prove the facts in the presentence report by a preponderance of the evidence.

Oral argument will help frame the issues and will provide the parties with an opportunity to address this Court's questions and concerns.

Respectfully submitted,

_____/s/_____
Ezra S. Gollogly
Patrice Meredith Clarke
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202-3201
(410) 752-6030 (telephone)
(410) 539-1269 (facsimile)
egollogly@kg-law.com
pclarke@kg-law.com

Dated: May 28, 2014
*Attorneys for Appellant*
*James Carl Spires, III*

30

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No. 13-4936        Caption: United States of America v. James Carl Spires, III

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements.

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ]  this brief contains 7,468 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[   ]  this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)and the type style requirements of Fed. R. App. P. 32(a)(6) because:
[ X ]  this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font; *or*

[   ]  this brief has been prepared in a monospaced typeface using _____ with _____.


_____ /s/ _____
Ezra S. Gollogly

Attorney for Appellant, James Carl Spires, III

Dated:  May 28, 2014

31

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of May, 2014, a copy of Appellant's Opening Brief was sent via the Court's electronic-filing system to all counsel of record who are registered CM/ECF users:

Michael Clayton Hanlon, Esq., Assistant U. S. Attorney
OFFICE OF THE UNITED STATES ATTORNEY
Fourth Floor
36 South Charles Street
Baltimore, MD 21201-0000
Email: michael.hanlon@usdoj.gov


_____/s/_____
Ezra S. Gollogly